**EAST TEXAS OIL REFINING CO. et al.
v. SIMMONS et al.**

No. 5050.

Court of Civil Appeals of Texas.
Texarkana.

April 21, 1937.

Rehearing Denied April 29, 1937.

Phillips, Trammell, Chizum, Estes & Edwards, of Fort Worth, W. H. Francis and Roy C. Ledbetter, both of Dallas, and Hunter L. Johnson, of Tulsa, Okl., for appellants.

Wynne & Wynne, of Longview, Caves & Waldrop, of Henderson, and Wm. A. Wade and Philip Brin, both of Longview, for appellees.

HALL, Justice.

Appellants as lease owners brought this suit against appellees, Jay Simmons, Eddie Mitchell, and numerous other persons, for title and possession of the leasehold interest in and to an 18-acre tract of land, a part of the Mary Van Winkle survey, and for damages. Appellees answered by general denial, plea of not guilty, and with cross-action admitting the title of appellants to the leasehold in the tract of land lying east of the west line of the Mary Van Winkle survey, and seeking removal of the cloud cast on their title to a 2.21-acre strip lying west of and adjoining the west line the Mary Van Winkle survey, and the 18-acre tract. Trial was to a jury which resulted in a verdict for appellees and judgment was entered accordingly, from which appellants prosecute this appeal.

This suit, though in form one of trespass to try title, is in fact an action to determine the true west boundary line of the 18-acre

tract and the Mary Van Winkle survey. The tract of land in controversy is triangular in shape, lying north and west of the International & Great Northern Railroad right of way, and is shown on the following map as Ed Mitchell 18 acres:

West boundary line of the Mary Van Winkle Survey." The Caruthers survey adjoins the Mary Van Winkle survey on the west.

Appellants' contentions may be summarized to be: The west boundary line of the

This land comes out of the northwest corner of a 522-acre tract formerly owned by Mary Ann Bean. The dispute here is whether line AB or line CD is the true west boundary line of the Ed Mitchell 18-acre tract, and its location on the ground. This correctly determined, the controversy is concluded.

Appellants are assignees of a lease given by Ed Mitchell and wife covering the 18-acre tract. Said lease describes the land covered by it as "being a part of the Mary Ann Bean 522-acre tract on the Mary Van Winkle Survey about 16 miles North from Henderson, Texas, and situated in Gregg County, Texas, and bounded as follows. Beginning where the W line of the right-of-way of the I. & G. N. Railroad through the 522-acre tract conveyed by B. F. Thompson to Mary Ann Bean intersects the N boundary line of the 522-acre tract," (which is point "X" on the map). Then follows the descriptive call out of which this controversy grew, which is: "Thence West (from point 'X') 660 varas, more or less, to the N. W. corner of said 522 acre tract, supposed to be on the

Mary Van Winkle survey being indefinite and undetermined, the call for distance on the north line of the land in controversy should control, on the theory that a call certain, though for distance only, should not be discarded for a call that is less definite. The call for distance when actually applied to the ground will go near to the point marked "D" on the map where stands a sweet gum tree about twelve inches in diameter on which are marks indicating a corner. This tree, however, is not called for in any of the deeds or mineral leases covering either the Ed Mitchell tract or the Mary Ann Bean 522-acre tract. The facts show it to have been marked in 1928 when some parties were attempting to locate the northwest corner of the Mary Ann Bean 522-acre tract.

■■ . It is now the settled law of this state that the intention of the parties to a deed, gleaned from the deed itself, will, if possible, be given controlling effect. Benskin v. Barksdale (Tex.Com.App.) 246 S.W. 360; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.(2d) 1080, 85 A.L.R. 391. When this rule is applied to the case

at bar, we find that the deed to Ed Mitchell of the 18-acre tract of land, and the same description is incorporated in the original lease and all assignments thereof, declares: (1) That the land conveyed is a part of the Mary Van Winkle survey; (2) that it is a part of the Mary Ann Bean 522-acre tract; and (3) that its northwest corner is identical with the northwest corner of the Mary Ann Bean 522-acre tract. Reference to the Mary Ann Bean deed dated December 31, 1860, reveals that the northwest corner of her 522-acre tract is at a point marked by a post (not a sweet gum tree) on the west boundary line of the Mary Van Winkle survey. This, in our opinion, makes certain the northwest corner of the Ed Mitchell 18-acre tract at a point on the west boundary line of the Mary Van Winkle survey which is a call for an object and is superior to and of greater dignity than the call for distance in the Ed Mitchell deed from the beginning point "X." The declaration in the Ed Mitchell deed to the effect that the Mary Ann Bean northwest corner was "supposed to be on the West boundary line of the Mary Van Winkle Survey" and the call for distance from the beginning point "X" for 660 varas, "more or less" convinces us that the parties to the Ed Mitchell deed were uncertain only as to the location of the west boundary line of the Mary Van Winkle survey, and when taken in connection with the statements in the deed with respect to the land being a part of the Mary Van Winkle survey and the call for the Mary Ann Bean 522 acres northwest corner clearly evidences an intention on the part of the parties to said deed to place and fix the northwest corner of the Ed Mitchell tract on the west boundary line of the Mary Van Winkle survey. And we overrule the contention of appellants that the call for distance in said Ed Mitchell deed would control over the call for the northwest corner of the Mary Ann Bean 522-acre tract located in the west boundary line of the Mary Van Winkle survey.

This being true, then the object of the search in the trial court was the true location on the ground of the west boundary line of the Mary Van Winkle survey. The evidence with respect to the location of the west line of the Mary Van Winkle survey was conflicting, and the trial court very properly submitted the issues relative thereto to the jury for determination. The jury answered these issues, upon sufficient testimony, favorable to the contention of appellees, and we shall not disturb such findings.

Appellants make the further contention that the 2.21-acre tract ABC&D should be held to be covered by the original mineral lease from Ed Mitchell and his wife under which they hold by assignment, by virtue of the following provision therein immediately following the description: "It being the intention to include all land owned or claimed by lessor in said survey, or surveys, whether correctly above described or not." And as authority for this contention we are cited to Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.(2d) 442; Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.(2d) 447. The provision in the lease under consideration in the two cases above referred to is: "It being the intention, however, of lessor to include within the terms of this lease not only the above described land, but also any and all other land owned or claimed by lessor in said survey or surveys in which the above described land is situated or *in adjoining surveys and adjoining the above described land*." (Italics ours.) The material difference between the provision in the lease in this case and the leases in the Sun Oil Company Cases, supra, is so apparent it will not be necessary to discuss them at any great length. The grant in the lease in this case is increased only to the extent of other lands owned by Mitchell in the "said survey or surveys" in which is located the 18 acres and which by the plain terms of the original mineral lease is declared to be in the Mary Van Winkle survey. In the Sun Oil Company Cases the provision in the leases add to the grant first made not only all other lands owned by lessor in the "said survey or surveys" in which the land first granted was actually situated, but also all land owned or claimed by lessor "in adjoining surveys and adjoining the above described land." The provision in the lease in this case does not include within its grant or grants land belonging to Ed Mitchell in adjoining surveys, and we would not be justified in extending the doctrine pronounced in the Sun Oil Company Cases so as to include within the terms of the original Ed Mitchell lease of land declared to be in the Mary Van Winkle survey the 2.21 acres which was found by the jury to be in the Caruthers survey.

By several assignments of error appellants complain of alleged improper ar-

gument of appellees' counsel. No bills of exception appear in the record as a basis for these assignments. In Chandler v. Wiemers (Tex.Civ.App.) 4 S.W.(2d) 569, 570, writ of error refused, it was held:

"Appellants present three propositions as grounds for a reversal and new trial.

"The first complains of improper argument and remarks of counsel, both in the opening and closing of the case before the jury. In the absence of a bill of exception, we will not pass upon the argument and remarks as constituting reversible error."

To the same effect is the holding in Safeway Stores, Inc., of Texas v. Rutherford (Tex.Civ.App.) 101 S.W.(2d) 1055; Tex.Jur., vol. 3, p. 432, § 306, p. 489, § 344, p. 581, § 407.

While it may not always be necessary to except to improper argument at the time it is made [Texas Indemnity Ins. Co. v. McCurry (Tex.Com.App.) 41 S.W.(2d) 215, 78 A.L.R. 760], it is necessary to present same to this court for review through the medium of a proper bill of exception duly authenticated by the trial judge. In this case we have nothing respecting the alleged improper argument but the allegations of appellants made in their motion for new trial, and this, in our judgment, is insufficient to justify our consideration of same.

The judgment is affirmed.